# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **GUILIOS MARKET, INC.**, a Michigan Corporation, **KHALIDA ASSK,** an Individual, and **NICK ASSK**, an Individual, <br><br> Plaintiffs, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | CIVIL ACTION NO. _____ <br><br> **COMPLAINT** <br><br> **Jury Trial:** ☐ Yes ☒ No |

The Plaintiffs, GUILIOS MARKET, INC., a Michigan Corporation, KHALIDA ASSK, an Individual, and NICK ASSK, an Individual, by and through their undersigned counsel and hereby file this Complaint against the UNITED STATES OF AMERICA upon the grounds set forth herein, and in support thereof, states as follows:

**FACTUAL BACKGROUND**

1. The Plaintiffs own and operate a small grocery store in Detroit, Michigan named GUILIOS MARKET, INC., a Michigan Corporation (hereinafter "Guilios"). Guilios has been a neighborhood staple, and functions as a small grocery store for local residents.

2. Located in 13th Congressional District of Michigan, Guilios serves a community where approximately 31% households receive Supplemental Nutrition Assistance Program benefits[1] ("SNAP"), formerly known as Food Stamps, which is overseen by the Food & Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). Of said households, approximately 57.10% are below the poverty level, 31.70% of said households are with one or more people 60 years of age and over, and 41.70% of said households are with child(ren) under the age of eighteen.

3. On August 31, 2017, the USDA, through the FNS, sent the Plaintiffs a Charge Letter pursuant to 7 C.F.R. §278.6, alleging that two EBT transaction type categories conducted by the Plaintiffs amounted to trafficking in SNAP benefits. The transactions contained within each of the categories listed by the Defendant in the Charge Letter occurred between February 2017 and July 2017, also called the "Review Period."

4. The Plaintiffs did not traffick in SNAP benefits at any time, including but not limited to the Review Period. Accordingly, they denied and defended against the Charge Letter, but on January 15, 2021, they were permanently disqualified from SNAP.

---

[1] See USDA Publication of August 2019, Profile of SNAP Households in 2017: Michigan Congressional District 13.

5. As a result, the store lost a considerable portion of its gross revenue (including revenue derived from SNAP) and a substantial portion of its clientele.

6. The Plaintiffs timely filed an Administrative Review as permitted by 7 C.F.R. §279, and on March 1, 2021 presented arguments and evidence in support of their position. The Plaintiffs took issue not only with the disqualification process and the inaccuracy of the evidence against them, but also with the comparative lack of direct evidence that any violations of SNAP retailer policies had occurred.

7. The Administrative Review Branch of the FNS responded to the Plaintiffs' appeal fifteen (15) days later, in a letter and opinion entitled Final Agency Decision, dated March 16th, 2021 (which was received on March 16th, 2021, and attached hereto as **Exhibit "A")**. The Plaintiffs' administrative appeal was denied.

8. This Judicial Appeal has been timely filed and seeks the reversal of the USDA's current decision to permanently disqualify the Plaintiffs from participating as a SNAP retailer.

**JURISDICTION AND VENUE**

9. The Plaintiffs bring this action based upon their disqualification from eligibility to participate in the Supplemental Nutrition Assistance Program, as codified by Congress in 7 U.S.C. §§ 2011 – 2036(c).

10. This Court has subject matter jurisdiction over the matters raised by the Plaintiffs in this case pursuant to 7 U.S.C. §2023(17), and 7 C.F.R. §279.7.

Furthermore, 28 U.S.C. §1331 gives this Court original jurisdiction over civil actions arising under the laws of the United States, for which 7 U.S.C. §2023(17), and 7 C.F.R. §279.7 qualify.

11.     Venue is appropriate in this District pursuant to 7 C.F.R.§279.7(a), 7 U.S.C. §2023(13) and 28 U.S.C. §1391(b) as Plaintiffs' business was owned and operated in Detroit, Michigan and because the facts giving rise the circumstances herein occurred in the Eastern District of Michigan.

**PARTIES**

12.     The Plaintiff, GUILIOS MARKET, INC. is a Michigan corporation whose principal place of business is at 21306 Schoolcraft, Detroit, MI 48223-2649. Guilios Market, Inc. is referred to herein as "Guilios" and referred to herein collectively with the other Plaintiff as "Plaintiffs".

13.     The Plaintiff, KHALIDA ASSK, an Individual, is a natural person and resident of Waterford, MI and is the registered owner of Guilios.  Ms. Assk is referred to herein collectively with the other Plaintiff as "Plaintiffs."

14.     The Plaintiff, NICK ASSK, an Individual, is a natural person and resident of Waterford, MI and is the registered owner of Guilios.  Ms. Assk is referred to herein collectively with the other Plaintiff as "Plaintiffs."

15.     The Defendant, the UNITED STATES OF AMERICA, acting through its agency, the United States Department of Agriculture (hereinafter referred to as

the "USDA" or "Department"), and its subservice, the Food and Nutrition Service. The Defendant may be referred to herein as "the Government" or "the Department."

**GENERAL ALLEGATIONS**

16. SNAP is a government program operated pursuant to 7 United States Code, Chapter 51, and codified more specifically as 7 U.S.C. §§2011-2036(c).

17. The general purpose of SNAP is to provide food benefits (formerly "food stamps") to program participants who meet certain financial need requirements. SNAP participants are awarded benefits (money) issued on a state-by-state basis in varying amounts based upon the needs of their household. These benefits are transmitted to, and utilized by the participant, through an Electronic Benefits Transfer (EBT) card, which conceptually functions similar to a debit card.

18. The benefits are to be used by the participant only for the purchase of food and other eligible items sold by approved SNAP retailer, such as Guilios.

19. In turn, SNAP retailers are governed by the Defendant through 7 C.F.R. §278.6 which in pertinent part permits the disqualification or suspension of retailers who violate SNAP regulations.

20. Significantly, SNAP violations on the part of retailers typically occur in two areas: (1) the sale of ineligible items to SNAP participants (using their EBT benefits), and (2) trafficking in SNAP benefits.

21. The term "trafficking" is defined at length by 7 C.F.R. §271.2, which states in pertinent part that trafficking is:

> (1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone;
>
> (2) The exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for SNAP benefits;
>
> (3) Purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount;
>
> (4) Purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or
>
> (5) Intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food;
>
> (6) Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signatures, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone. 7 C.F.R. §271.2 (2016).

22. While most of 7 C.F.R. §278.6 sets forth a graduated scale for punishment of SNAP retailers for the sale of ineligible items, trafficking is treated more harshly. Specifically, if a retailer is found to be trafficking in SNAP benefits, it (more specifically, the individual(s) who applied for SNAP participation) is permanently disqualified from participation in the program and may be issued a Transfer of Ownership Civil Money Penalty ("Transfer CMP") of $11,000.00 per violation.

23. The Transfer CMP itself is not immediately assessed against the retailer, but instead is held in abeyance until the retail store is sold (regardless of the period of time intervening between the permanent disqualification and the sale), and then assessed against the individual(s) who were the applicants on behalf of the store.

24. Such are the circumstances of this case. The Plaintiffs have been permanently disqualified by the Defendant, resulting in damage to the Plaintiffs and a potential future fine.

### ERRORS & OMISSIONS ON THE PART OF THE DEFENDANT

25. In this case, the Plaintiffs did not engage in trafficking in SNAP benefits and have defended against the allegations accordingly.

26. The Defendant lacks any direct evidence (eye-witness accounts, receipts, or the like) that would conclusively indicate that trafficking occurred.

27. Instead, the Defendant has based its disqualification upon data analysis, which is circumstantial by definition: evidence from which more than one logical conclusion can be reached.[2]

28. Each of the transactions set forth in the Charge Letter were categorized and selected by the Defendant's ALERT System computer program, which identifies specific transaction types (also called "Scans"), including two of which are addressed herein:

> a. "Multiple transactions were made from individual benefit accounts in unusually short time frames" (this is referred to as Scan B2 by the Defendant); and
>
> b. "Excessively large purchase transactions were made from recipient accounts." This is referred to as Scan F by the Defendant.

29. The Scan B2 transactions – which take issue with how quickly transactions occur – take issue with transactions that occurred 48 minutes, and 50 seconds apart. Some of the transactions occurred on separate days, with the longest duration cited by the Defendant occurring 23 hours, 01 minutes (and 39 seconds) apart.

30. The largest transaction cited by the Defendant over its five-months'

---

[2] This reference is drawn from *Chief Counsel Advisory*, IRS CCA 200912021, though it is perhaps the best, succinct definition of the term.

worth of data was only $121.25. The Defendant failed to locate transactions that exceeded $121.25 over the five months of the Review Period.

31.     The Department's conclusion that these Scan categories have any meaningful statistical correlation to the very specific act of trafficking in SNAP benefits is without foundation. There are no statistical studies, case studies, or other primary reference information that is evidentiarily admissible to substantiate such correlation, and therefore the allegation of trafficking. In fact, the Defendants' Rule 30(b)(6) witness with respect to the ALERT Scan categories, Mr. Douglas Wilson, has previously testified on multiple occasions that those transaction categories are merely suspicious, and not in-and-of-themselves, indicative of trafficking.[3]

32.     Furthermore, Mr. Wilson, as the Government's Rule 30(b)(6) witness with the most knowledge of the ALERT system, indicated that the categories and transactions cannot distinguish between different SNAP violation types (such as trafficking, issuance of credit, and sale of ineligible items).

33.     There is no statistically meaningful correlation between the two transaction categories and the act of "trafficking."

34.     Despite this, cases using the ALERT system's categories are referred to FNS' Investigative Analysis Branch (IAB) for investigation and prosecution.

---

[3] Mr. Wilson's Deposition transcripts are the result of other Judicial SNAP reviews pertaining to trafficking and data analysis. The Plaintiffs will separately produce them to the Defendant, and present as necessary to this Court. However, attachment to this Complaint would be unnecessary and redundant.

35. This instant matter was just such a case, referred to IAB Section Chief Ms. Gilda Torres division for evaluation and prosecution. Ms. Torres was the Section Chief that issued the permanent disqualification in this case.

36. This process is not an impartial one, nor is it unbiased.

37. As a rule, every single case referred to the IAB for data analysis is charged with trafficking in SNAP benefits.

38. Of the thousands of cases handled every year, the IAB makes a finding of trafficking in nearly all (between 90% and 100% depending upon the section) of the cases. There is no impartiality in this process. It is an assembly line.

39. The Defendant, in this case did little in way of investigation to support its position that trafficking was more likely than not the cause of trafficking. Keeping in mind that as of this filing, the Plaintiffs **have never seen the Administrative Record** (this is not an exhaustive list of the failures on the party of the Defendant's data analysis):

   a. The Defendant did not interview the households engaged in the transactions, despite having the ability to do so;

   b. The Defendant continued to rely upon data comparison with other stores that differ materially in business operations and clientele for a variety of reasons; and

   c. The Defendant did not conduct any research on household shopping

and spending habits, specifically with the effect on participants' store loyalty, item selection, purchase transaction frequency and transaction sizes.

40. At the initial stages of the Administrative Decision, it is the Government's burden to prove by a preponderance of the evidence that it is more likely than not that trafficking had occurred.[4]

41. The Government did not (and does not) have sufficient evidence to meet that burden, or to link the transactions to trafficking. For purposes of a judicial review, the burden does switch to the Plaintiff.

## Plaintiffs' Allegations

42. The Plaintiffs do not have access to the Administrative Record. At no point in this process have the Plaintiffs been given meaningful access to any records (aside from the Charge Letter and the Initial Disqualification Letter) relied upon by the Department in its analysis. What information is in the Plaintiffs' possession was derived from a Freedom of Information Act Request but is heavily redacted and virtually useless for purposes of preparing its case.

43. Furthermore, there have been no decisions made by Administrative Law Judges, Department Attorneys, or other legal-trained individuals who could adequately weigh the evidence before the Department during the administrative

---

[4] On Judicial Appeal, the burden rests with the Plaintiffs.

process to date.

44. What little Due Process exists in this process is borne out only here, at the Judicial Review stage of the case.

45. The Plaintiff's transactions were bona-fide purchases of food items, in exchange for SNAP benefits as the system was intended, albeit not necessarily with the timing or amounts preferred by the Department.

46. However, the shopping habits of SNAP participants in the store are consistent with the transactions listed, and the Plaintiffs anticipate such testimony from these households.

47. In any case, Guilios was not at any point in time, engaged in trafficking SNAP benefits.

## COUNT I:  REQUEST FOR JUDICIAL REVIEW

48. The Plaintiffs incorporate and restate each and every paragraph set forth above as though more fully set forth herein.

49. The Plaintiffs, pursuant to 7 U.S.C. §2023 and 7 C.F.R. §279.7 have the right to, and hereby do request a *de novo* judicial review of the permanent disqualification issued by the Defendant.

50. The Plaintiffs maintain that they did not traffick in SNAP benefits and ask that the Court conduct a trial on the merits of the matter, permitting the parties to present testimony and submit evidence in support of their positions.

51. The presence of transactions which fall into the Defendant's arbitrary "Scan" categories is attributable to the Plaintiffs' business practices, the local business environment, SNAP participant shopping habits, and other environmental circumstances which are not obvious in transaction and inventory analysis alone.

52. Furthermore, the Plaintiffs qualified for the issuance of a Civil Money Penalty, but their request was errantly denied by the Defendant.

53. The Defendant's decisions to both disqualify Guilios and deny the issuance of a civil money penalty were both invalid and inaccurate for those reasons set forth above, as well as such further reasons as may be uncovered during the discovery phase of this matter.

54. Accordingly, the permanent disqualification of the Plaintiffs should be reversed.

55. Furthermore, to the extent that the Plaintiffs incur attorneys' fees and court costs in conjunction with this Judicial Appeal, the Defendant should be made to pay such fees and costs.

WHEREFORE, the Plaintiffs, Guilios Market, Inc., a Michigan corporation, Khalida Assk, an Individual, and Nick Assk, an Individual, respectfully ask this

Court to conduct a *de novo* review of this matter, conduct a trial upon the merits of the Plaintiffs' case, and enter Judgment reversing the permanent disqualification, as well as awarding the Plaintiffs any attorney's fees and court costs they may incur in this matter.

Dated: April 14, 2021

Respectfully Submitted,

**METROPOLITAN LAW GROUP, PLLC**

*/s/ Andrew Z. Tapp*
**ANDREW Z. TAPP, ESQ.**
Florida Bar No.: 68002
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
Telephone: (813) 228-0658
Facsimile: (813) 330-3129
Email: Andrew@Metropolitan.Legal
LaJeana@Metropolitan.Legal

**COUNSEL FOR PLAINTIFFS**